ELIZABETH A. CALLAHAN, *et al.*, Respondents, *vs.* JOHN W. SHOTWELL, Adm'r, etc. of AUSTIN A. KING, deceased, Appellant.

1. *Contract of attorney for services—Full performance prevented by death—Action against administrator to recover back part proceeds of land conveyed to secure fee—Substitution of new attorney.*—Where an attorney took a conveyance of a tract of land to secure his fee for services to be performed in certain specified cases, of which services his death prevented more than a partial performance, a proper proceeding would be by bill against his estate, to set aside the conveyance upon a tender of so much of the fee agreed upon as was found to be really due; but when the land was sold by his estate, plaintiff might recover back the surplus proceeds over and above the ascertained value of such services.

　In such a case the administrator could not defend against the recovery of such surplus by showing a readiness to perform the remaining services through another attorney.

2. *Arbitrations and references—Reference of cause no ground for reversal, when.*—Where, at the time of the reference of a case, no objection thereto was made or exception taken by either party; and both appeared and took testimony, and the pleadings showed that the taking of an account was necessary, *held* that the reference would furnish no ground for the reversal of the cause.

### *Appeal from Ray Circuit Court.*

*E. F. Esteb & J. W. Shotwell,* for Appellant.

I. The court erred in referring this cause without the written consent of the parties. (Wagn. Stat., 1041, § 18 ; Caulk vs. Blyth, 55 Mo., 293.)

II. If plaintiffs had any right of action in the premises, it was to set aside the quit-claim conveyance to Gov. King upon the payment of reasonable compensation for services actually rendered.

*C. T. Garner, with Doniphan & Reed,* for Respondents.

I. Defendant's objection to the reference, to avail, must have been made at the time of the order of reference.

II. It is unequitable and against the law for the estate to hold the land and not refund the amount of the unearned services, for which the land was conveyed ; and equity will compel a re-payment of such amount. (58 Barb., 233 ; 59 Barb., 574 ; 2 Mo., 198 ; 4 Mo., 304.)

NAPTON, Judge, delivered the opinion of the court.

The suit, during its progress, seems to have assumed a variety of phases; but it grew out of, and is based on, the following contract made by Gov. King in 1869:

" Whereas Elizabeth H. Callahan, formerly Elizabeth Nutter, and James M. Callahan, her husband, have this day conveyed by quit-claim deed to me, as tenant in common with Tilton Davis, the following tract of land in Lafayette county (here follows a description of the land, 200 acres); now, therefore, this agreement witnesseth, that in consideration of said land and conveyance, as aforesaid, I do hereby agree with said Elizabeth Callahan, her heirs, etc., to give my personal services, without any additional charge therefor, to the following cases pending and commenced in the different courts of Lafayette County, Mo., to-wit: Lewis Megede vs. said Elizabeth A. Callahan; E. H. Nutter vs. Thomas & Samson; Sallie M. Nutter vs. E. H. Nutter and others; State of Mo. vs. William H. Warner; S. G. Wentworth, Adm'r vs. M. Chapman and others; Sallie M. Nutter vs. J. & E. M. Callahan; and also to all and any cases that may hereafter arise, affecting or designed to affect the title of said E. A. Callahan, formerly Nutter, in and to the land conveyed to her by her brother Samuel M. Nutter, by deed dated sometime in July or August, 1868; and also agree and bind myself to convey said lands herein described to said Eliz. A. Callahan, her heirs or assigns, by quit-claim deed thereto, so soon as said suit of Sallie M. Nutter vs. E. M. Nutter and others, involving the validity of said transfer by said Samuel M. Nutter to said E. H. Nutter, now Callahan, is finally decided in court, or the further prosecution thereof, as commenced, is abandoned by said Sallie M. Nutter, provided, however, this obligation to re-convey said land as aforesaid, is based and conditioned upon the fact of the payment to me, my heirs or legal representatives, of the sum of $2,000, with interest thereon at eight per cent. from August 1, 1869, within six months after such final decision or abandonment of said suit as aforesaid; so that should said E. H. Callahan, her heirs or

assigns pay to me, my heirs or legal representatives, the said sum of $2,000, with interest thereon, as aforesaid, within six months next after said case commenced by said Sallie M. Nutter against E. H. Nutter, now Callahan, and others, shall have been finally decided in court or by her, said Sallie M. Nutter, abandoned, and no further prosecution is commenced or instituted, then this agreement to be void and of no effect or force in law.

Witness my hand and seal, this 8th day of Sept. 1869.

AUSTIN A. KING."

The petition was amended three or four times, and the answers changed; and the record is full of motions to strike out various parts of the pleadings, and there are three or four bills of exceptions, most of which seem to be entirely unnecessary.

The basis of the petition is this, that Gov. King, by this contract agreed to attend professionally, as a lawyer, to sundry cases recited in the contract, and as a compensation was to receive $2,000, and took a conveyance of 200 acres of land to secure his fee, it being understood that if the $2,000 was paid he would re-convey; that this contract was in September, 1869, and that he died in March or April 1870, and consequently was unable to perform the contract, except so far as to make the argument of one case on demurrer in the Lafayette Circuit Court, and to give his advice in consultation upon some of the other cases.

And this suit is brought to recover from the estate of Gov. King a return of the money so agreed to be paid as fees, or so much of it as was not earned by his professional services estimated on the basis of an agreed compensation of $2,000 for all the cases. As no money was paid, but land conveyed rather as a security for fees, such a form of action seems rather new; but it appears somewhere in the course of a record of one hundred pages, that since the death of Gov. King a partition sale of the land between his heirs and Mr. Davis, who was associated with him in the contract, has been made, and the aggregate sales amounted to $3,200. So that an ac-

tion to set aside the conveyance, which would have seemed the most suitable under the facts, was abandoned; and this suit is really based on a supposed equity in the plaintiff to be refunded out of the estate, so much of the entire fee (which the land was conveyed to secure) as in equity should be refunded by reason of the failure of the decedent to perform his contract.

It is clear that the contract of Gov. King was not wholly performed by reason of his death occurring but a few months after it was made, and before any of the cases were tried, except one in Lafayette Court, decided on demurrer.

What the value of the services rendered in this and other cases in their preliminary stages was, is of course a matter about which lawyers might be expected to differ.

The case was referred to a lawyer as referee, and a number of witnesses examined; and the report of the referee was that the plaintiff was entitled to $1,000 damages. This sum would seem to show, that, seeing the estate only received the half of $3,200 from the sale of the land, the services actually rendered were only worth $600. The evidence on this point was conflicting, but we concur in the opinion of the Circuit Court in sustaining the report of the referee.

It is hardly necessary to say that the proposal of the administrator to the plaintiff to employ any other lawyer that the plaintiff might select, after the death of Gov. King, was properly rejected from the answer, and excluded from the proof. The contract was for the services of Gov. King; and no substitute could be forced on his client.

It is also objected here, that the case was referred. No objection was made at the time of the reference by either party; nor was any exception taken to the action of the court. Both parties appeared before the referee, and testimony was taken on both sides. As the pleadings stood at the time of the reference, it was evident that an account between the parties was necessary for the information of the court.

It would seem that the proper course to have pursued in this case for the plaintiff to have recovered damages for the

26—VOL. LX.

breach of the contract with defendants' testator, would have been a proceeding to set aside the conveyance upon a tender of so much of the fee agreed on as was really due; but as the title was ultimately sold, and the estate had converted the land to its use, the result in this case is virtually the same.

Although the conveyance to Gov. King was on its face an absolute one, the contract signed by him shows it was merely designed as a security for a sum of money to become due him in certain contingencies. All the money did not become due; and, therefore, on the payment of what was really due, a court of equity would have ordered a reconveyance or transferred the title back to plaintiff.

The judgment is affirmed.