THOMPSON & THOMPSON, Respondent, v. THE
    MISSOURI PACIFIC RAILWAY COMPANY,
    Appellant.

Kansas City Court of Appeals, November 16, 1908.

**ATTORNEY AND CLIENT: Lien: Judgment: Agency.** Plaintiffs,
    a firm of attorneys, undertook to enforce a death claim against
    a railway for forty per cent of the judgment. They hired R. A.
    for twenty per cent to do certain work and they hired the firm
    of P. & H. to assist them in the case for twelve per cent.
    Plaintiffs did not appear at the trial but P. & H. did and made
    a fair settlement and took judgment for $2,500 to be paid to the
    clerk who paid the claimant $1,500 only and how the remaining
    forty per cent was divided is not certain. *Held,* P. & H. were
    the agents of plaintiffs and their action bound them and they
    are not entitled to enforce a lien for their fees.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A.
    Mosman,* Judge.

REVERSED.

*Martin L. Clardy* and *Ben. J. Woodson* for appellant.

(1) · The lien of an attorney upon a judgment recovered by him will be enforced according to the law of the State (Nebraska), when the judgment is sought to be collected. 13 Eng. Pleading and Practice, 151; McGinness v. Car Co., 174 Mo. 225. (2)    The statute did not deprive plaintiff, Dora J. Rowe, in said case of control over her own law suit of Curtis v. Railroad, 118 Mo. App. 351.

*J. W. Boyd* and *Thompson & Thompson,* for respondent, filed argument.

ELLISON, J.—The plaintiffs are attorneys at law. They claim a lien on a judgment in favor of their client rendered against the defendant for $2,500. This action was brought to enforce the lien. It was sustained in the trial court and defendant has brought the case here.

It appears that one Gordon L. Rowe, an unmarried man, was killed in the State of Nebraska through the ·negligence of the defendant and that his mother, who was appointed his legal representative, employed the plaintiffs, who resided in this State, to prosecute an action for damages in the courts of Nebraska, agreeing to pay them, as compensation for their services, forty per cent of the sum which might be recovered. The laws of Nebraska give a lien to the plaintiff's attorney in such cases. The plaintiffs gave due notice of their lien to the defendant. Plaintiffs, themselves, then employed R. A. Holmes to "secure all evidence in the case" and had him agree to pay one-half of all expenses of the suit, and that he should receive therefor twenty per cent of the amount recovered— that is to say, one-half of what they were to get from Mrs. Rowe. Plaintiffs then also themselves employed Pitzer & Hayward, a firm of attorneys in Nebraska,

to assist them in instituting and conducting the suit to final judgment. For the services of this firm plaintiffs were to pay them twelve and one-half per cent of the amount recovered. Both these contracts were in writing and it will be seen that plaintiffs contracted away, for assistance, the far greater part of what they were to get for their services. But of this we need not be concerned, nor, in view of the conclusion at which we have arrived, need we take further notice of the plaintiffs' contract with Holmes.

When the case was about to come up in the Nebraska court for trial, Mrs. Rowe, the plaintiff in that case, asked these plaintiffs to go there to take part. They could not do so; whether because they felt that Pitzer & Hayward were on the ground and could do all that was necessary, need not be inquired. Mrs. Rowe was there. It was there agreed by the attorneys for the defendant railway and Mrs. Rowe and Pitzer & Hayward that judgment should be rendered against the railway for $2,500 and costs, and that defendant should pay the judgment to the clerk of the court, which it did. The cost being $134.25, the total sum paid in satisfaction of the judgment was $2,634.25. The manner in which this was paid out by the clerk is not clear. It seems from Mrs. Rowe's testimony that she only received, as the plaintiff, $1,500, which would be the judgment less forty per cent, which was originally agreed upon to be paid to these plaintiffs and which they afterwards agreed to share up with Holmes and Pitzer & Hayward, as already stated. It is a fair inference from the record that Holmes received what was to be paid to him and so did Pitzer & Hayward. At least they appear to be satisfied. But however unsatisfactory the record may be as to the distribution of the amount of the judgment, it will not affect our conclusions on the case drawn from undisputed matters, most of them conceded.

134 App—38

They are that Pitzer & Hayward were employed by these plaintiffs to represent them in prosecuting the case—the wording of the employment is to "assist" them. But, in fact, they acted for them and were their agents. As such agents they could bind plaintiffs as to what they did in so far as the scope of their agency would permit. The judgment was agreed upon in a fair and open settlement between the parties—that is, Mrs. Rowe, the plaintiff in that case (advised by Pitzer & Hayward) and the attorneys for the railroad. There was no fraud, nor advantage sought of any one. Mrs. Rowe could well enter into such a settlement under our ruling in Curtis v. Railroad, 118 Mo. App. 341. Her right to do so is not disputed by these plaintiffs. But they are claming a lien for the full amount of their per cent of the judgment due under their original contract, unaffected by the payments to Holmes or Pitzer & Harvard. We need not say whether defendant by proper plea could take the benefit of the payments made to these parties, for that is not involved in the question of Pitzer & Hayward's agency. That agency contemplated taking part and advising Mrs. Rowe as to an agreement for a judgment and the amount thereof and that it should be made secure and certain of no further delay by being paid to the clerk of the court. Such functions of an attorney are in almost constant exercise, and it would be altogether unreasonable to suppose that plaintiffs, or any other person in like situation, did not contemplate that attorneys substituted for them would enter into such disposition of the case. The defendant had a right to suppose that such was their authority since it so clearly had the appearance of being within its scope. To allow the judgment to stand would be to hold defendant responsible for the act of plaintiff's own representatives, and would be no less, in effect, than to permit them to take advantage of their own act.

In consideration of the foregoing, we conclude that defendant is discharged from the lien. The demurrer to the evidence should have been given. The judgment is accordingly reversed. The other judges concur.