ETTA C. LAWSON, Executrix of the Estate of C. C. LAWSON, Deceased, Appellant, v. MISSOURI & KANSAS TELEPHONE CO., Respondent.

Kansas City Court of Appeals, February 2, 1914.

1. ATTORNEY'S LIEN: Who Entitled Thereto: Remedial Statute. By the terms of the statute every attorney who appears has a lien upon the cause of action which attaches to the judgment and the proceeds thereof into whosesoever hands they may come. An attorney, either at the beginning or during the progress of the case, is within the purpose and protection of the statute. The lien is on the cause of action

from the commencement thereof and the statute is remedial and should be liberally construed.

2. ———: **No Notice Necessary When.** When the attorney's name is to the petition no other formal notice of a lien is necessary after suit is filed and summons served.

3. ———: **Services Terminated by Death.** An attorney who performs services is entitled to compensation for the services he actually rendered even though they were prematurely terminated by his death.

4. ———: ———: **When Lien is not Defeated by Payment to Co-Attorney.** Payment of the judgment to such deceased's co-counsel will not satisfy the lien since such co-counsel was not deceased's agent, and, if he had been, such agency was terminated by the death of the principal.

5. ———: **Remedies Open to Attorney.** Three remedies are open to an attorney to protect and enforce his lien. 1. He may proceed against his client. 2. He may proceed against the defendant either by motion in the original case or in an independent proceeding. 3. He may proceed against the judgment itself. He has either of the first two without regard to whether the case is settled before or after judgment and all three without regard to whether the client is solvent or insolvent.

6. ———: **Payment of Judgment.** The statute creates a valid assignment of the judgment *pro tanto*; and any defendant knowingly paying a judgment without taking care of such lien will be liable to pay again to the extent of such lien.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

REVERSED AND REMANDED (*with directions*).

*Sangree & Bohling* and *W. H. Bohling* for appellant.

*George F. Longan, Gleed Hunt* and *Palmer & Gleed* for respondent.

TRIMBLE, J.—This is a suit by Etta C. Lawson, Executrix of C. C. Lawson, deceased, against respondent for an attorney's fee under the Attorney Lien Law, sections 964 and 965, Revised Statutes 1909.

A jury was waived and the cause was submitted to the court upon an agreed statement of facts. According to it, the facts are that plaintiff is executrix as aforesaid; that said C. C. Lawson was a duly licensed and practicing attorney; that he died on February 26, 1913; that if plaintiff is entitled to recover on the facts agreed upon, then plaintiff should have judgment for $187.50 and for costs. The agreed statement of facts then proceeds with still further facts which, stated as compactly as possible, are as follows:

1. That in July, 1911, one J. Ida Allen met with an accident in Pettis county, Missouri, and sustained certain alleged injuries claimed to have been caused by the negligence of respondent.

2. That some time after her accident Miss Allen employed said C. C. Lawson, an attorney of the Pettis county bar, to institute suit against respondent to recover damages.

3. That before said suit was filed C. C. Lawson, by and with the knowledge and consent of Miss Allen, associated with him for the purpose of assisting in bringing and prosecuting said suit, R. S. Robertson, an attorney of the Pettis county bar.

4. That on August 21, 1911, C. C. Lawson and R. S. Robertson, as attorneys for Miss Allen, instituted suit in the Pettis county circuit court against respondent, the petition being signed by C. C. Lawson and R. S. Robertson, attorneys for plaintiff.

5. That on October 9, 1911, respondent herein (defendant in said suit) filed a demurrer to Miss Allen's petition; that said C. C. Lawson and R. S. Robertson argued said demurrer for the plaintiff in that case, and said demurrer was overruled; that the said defendant thereupon filed answer on December 4, 1911, and a reply was filed thereto signed "C. C. Lawson and R. S. Robertson attorneys for plaintiff."

6. That on December 20, 1911, the trial of that case was begun, but the court sustained an objection

to the introduction of any evidence under the petition and said C. C. Lawson and R. S. Robertson thereupon took leave to file an amended petition; that at said trial R. S. Robertson made the opening statement of the case for plaintiff to the jury, and conducted the examination of plaintiff up to the time the objection to the introduction of any evidence under the petition was sustained.

7. That on February 5, 1912, the said C. C. Lawson and R. S. Robertson filed an amended petition in said cause.

8. That from the time of instituting said suit up to February 26, 1912, the date of the death of said C. C. Lawson, C. C. Lawson appeared as one of the attorneys of record for Miss Allen in said case.

9. That after C. C. Lawson's death on February 26, 1912, Charles E. Yeater, an attorney of the Pettis county bar, became one of the attorneys of record for Miss Allen in her case against respondent, and continued to be an attorney of record to the close thereof.

10. That on May 27, 1912, said Charles E. Yeater and R. S. Robertson as attorneys for Miss Allen filed a second amended petition in said cause and the case was then continued to the October term, 1912.

11. That R. S. Robertson and Charles E. Yeater tried the case and obtained judgment for $750 October 9, 1912.

12. That on October 10, 1912, the day following the rendition of judgment, the attorney for plaintiff in the cause now before the court met one of the attorneys for defendant in the Allen suit and casually mentioned the fact that C. C. Lawson or his estate was entitled to a fee or a part of the Allen judgment. No demand was made concerning the payment of said judgment, and what was said was only in general conversation. No notice of attorneys lien was filed or served by any of Miss Allen's attorneys; nor was any notice given or served upon respondent that C. C. Lawson's estate

claimed an interest in said judgment for services rendered by said Lawson nor was the conversation above mentioned repeated to respondent herein until long after said judgment was paid.

13. That said judgment was paid October 16, 1912, by check drawn in favor of R. S. Robertson and Charles E. Yeater, attorneys of record for Miss Allen, and that said Robertson and Yeater accepted said check in payment of the Allen judgment, cashed the same, and satisfied the judgment as attorneys of record.

14. That respondent had no knowledge of the relations, contractual or otherwise, existing between Miss Allen and her attorneys, or between her said attorneys, except such as was shown by the record.

15. That R. S. Robertson was at all times an attorney of record for Miss Allen in her case; that he was in fact the actual attorney in the case, both before and after the death of C. C. Lawson.

16. That said C. C. Lawson and R. S. Robertson were not general partners in the practice of the law. C. C. Lawson received no compensation for his services in said suit during his life time nor has his estate received any since his death.

The court rendered judgment for defendant, and the executrix of C. C. Lawson's estate has appealed. If her appeal is sustained, the case must, under the agreed statement of facts, be reversed and remanded with directions to render judgment in her favor for $187.50.

The attorney, C. C. Lawson, was entitled to compensation for the services he actually rendered even though they were prematurely terminated by his death. [Callahan v. Shotwell, 60 Mo. 398; Senneff v. Healy, 135 N. W. 27; Morton v. Forsee, 249 Mo. 409.]

By the terms of the statute every attorney who appears has a lien upon the cause of action which attaches to the judgment and the proceeds thereof in

whosesoever hands they may come. [Sec. 964, R. S. 1909; Bishop v. United Railways, 165 Mo. App. 226, l. c. 231.] An attorney either at the beginning, or during the progress of the case, in within the purpose and protection of the statute. [Smith v. Wright, 153 Mo. App. 719, l. c. 721.] The lien is on the cause of action from the commencement thereof. [Sec. 964, R. S. 1909; Conkling v. Austin, 111 Mo. App. 292; Taylor v. Transit Co., 198 Mo. 715 l. c. 727; Waite v. Railroad, 204 Mo. 491 l. c. 501.] And the sections creating a lien in favor of attorneys are remedial and should be liberally construed. [Waite v. Railroad, 204 Mo. 491; Bishop v. Railway, 165 Mo. App. 226, l. c. 230.]

Applying these principles to the case in hand, we see that Lawson, being one of the attorneys who brought the suit for Miss Allen and who appeared therein for her, was entitled to be compensated for the services performed by him; that his right to compensation for the services he actually rendered is not defeated even though his services were prematurely terminated by his death; that the services thus actually rendered by him are agreed to be worth $187.50 if his estate is entitled to recover anything. We see also that under the statute and authorities hereinabove cited, Lawson obtained a lien for said services on the cause of action in that case, and that said lien attached to the judgment obtained therein. Said lien passed to the legal representative of Lawson upon his death. [Whitecotton, Admx. v. Railroad, 250 Mo. 624.] No notice of decedent's lien was necessary after suit was filed and summons served, since he was one of the attorneys who brought the suit and appeared in said case. This was all the notice required. [Whitecotton, Admx. v. Railway, supra, and cases cited.]

The agreed statement of facts shows that Robertson was employed with Miss Allen's knowledge and consent. This made Robertson and Lawson cocounsel

for Miss Allen. That is, both were attorneys for her, and Robertson was not acting merely as the agent of Lawson. Consequently, under the statute each of them had a lien for their respective services.

So that, when the judgment was rendered, there was a lien in favor of Lawson for the services he had rendered and also one in favor of the other attorneys for the services they rendered. Therefore, it would seem that since neither Lawson nor his estate has been paid for the services he rendered, there exists a lien for such services which the estate can enforce against someone unless the same has been lost or discharged.

But defendant says that Robertson as counsel for plaintiff throughout, both before and after Lawson's death, had the right to accept payment of said judgment and that payment to him was a valid payment. Doubtless it was a valid payment of the judgment, but is it a discharge of Lawson's lien? Robertson was not a partner of Lawson's. He was attorney for Miss Allen, cocounsel with Lawson, and not merely Lawson's agent to assist him. And if there was any element between them by reason of the fact that Lawson may have selected or chosen Robertson to be the cocounsel, still such agency relation was terminated by Lawson's death. So that Robertson had no authority, as agent for Lawson, to release Lawson's lien after Lawson's death, by receiving payment from defendant. In Thompson v. Thompson, 134 Mo. App. 591, the cocounsel receiving payment were the agents of the one claiming a lien at the time payment was made, and payment to the agent was payment to the principal in that case. In Compher v. Telephone Co., 137 Mo. App. 89, the money was deposited in court by being paid to the clerk, the settling defendant taking care to notify the claimant of the lien that it would do so. The clerk paid it to Guthrie whom the lien claimant had made his agent by employing him to assist. Of course, payment

to the agent discharged the principal's lien for the payment.

But defendant says that the Attorneys Lien Statute was not intended to protect one attorney from another but only to protect an attorney from his client. The statute does not so state. It gives every attorney, who appears and renders service, a lien which cannot be affected before or after judgment. Payment to the client will not defeat the lien. Then how can payment to that client's other counsel defeat the lien unless there is such a relation existing between such other counsel and the lien claimant as to make the receipt of the judgment by such other counsel the act of, and binding upon, the lien claimant? But it is urged that as section 964 gives Lawson's estate a lien on the proceeds of the judgment into whosesoever hands they come, and as Robertson and Yeater had a right to receive payment of the judgment and the same was paid to them, then Lawson's estate should *follow the fund* rather than go upon defendant and require it to pay again. This view is presumably based on the theory that defendant in this case has paid *after* judgment, and therefore plaintiff must follow the fund since section 964 does not say in explicit terms that defendant *shall be liable,* but only that plaintiff has a lien which follows the proceeds into whosesoever hands they come, and that section 965 makes defendant *liable* only in the event it settles *before* judgment. It is true that part of section 965 expressly making defendant liable is found in the last seven lines of said section and deals only with a defendant who settles before judgment. But just before that, this same section, as well as section 964, says the lien cannot be affected by any settlement either before or after judgment. If a lien is created which cannot be affected, it would seem that the general law would make the defendant liable if it paid said judgment without taking care of such lien. In such case, the defendant's liability would de-

pend, not upon whether section 964 expressly made
it liable, but upon its own act in paying the judgment
without regard to the lien, very much as it would if it
paid a debt to a creditor after notice that the debt had
been assigned. [Young v. Renshaw, 102 Mo. App. 173
l. c. 185.] The two sections give a lien on the judg-
ment which cannot be defeated, and, by operation of
law, such lien should be treated as a valid assignment
of the judgment *pro tanto*. [Terney v. Wilson, 45 N.
J. 282; Williams v. Ingersoll, 89 N. Y. 508; Weeks v.
Judges, 73 Mich. 256; Young v. Renshaw, 102 Mo. App.
l. c. 185-6] (The remarks of Judge Bland in the Ren--
shaw case are not strictly *obiter* because, at the time
he made them, he did so intentionally and with full
knowledge of their effect since he was then deciding
the case on the strength of such reasoning. But, if
they be *obiter*, still they are valuable as the "formula-
tion of the views of a learned jurist." [Wait v. Rail-
road, 204 Mo. l. c. 496.] And the Supreme Court, in
O'Connor v. Transit Co., 198 Mo. l. c. 644, say that the
learned Judge in the Renshaw case "very clearly
pointed out the nature and character of the cause of
action under the provisions of this statute.") Hence
if a defendant knowingly pays a judgement without
taking care of such assignment or lien, it will be liable
to pay again to the extent of such lien. It is true, in
Wait v. Railroad, 204 Mo. l. c. 502, the Supreme Court
says the question whether an independent action can
be maintained against a "settling *judgment* defend-
ant" has not been, and is not, decided. But it does
not thereby cast doubt on the proposition. In fact, on
page 503 the court say: "If the reasoning of Young v.
Renshaw, supra, as approved by Fox, J., in O'Connor
v. Transit Co., supra, is to be followed (and no reason
is apparent to us why it should not be followed when
a case in point arises) then the same remedy set forth
in the fifth hypothesis above is open to an attorney
where the judgment is compromised and satisfied with-

out his consent *after it has become a finality.*" In addition to this Johnson, J., in Curtis v. Railway, 118 Mo. App. 341, held that an attorney having a lien, and not receiving payment thereof, has *three* courses open to him, one of which is to go after the defendant for the amount due in an independent proceeding. And while the decision discusses the fact that payment was made by the defendant in that case *before* judgment became final, yet this discussion was not brought into the case to distinguish it from one where the payment was made after final judgment, but such discussion was entered into simply because it was necessary *in order to determine the amount of the fee to which the plaintiff was entitled.* It was a percentage case, and as the judgment was not final, it could not fix the fee. Nor would the fee be fixed by a judgment in any case where the settlement was made before judgment. The same may be said of Yonge v. Transit Co., 109 Mo. App. 235. And in this last case it is held that the solvency of the client, with whom a settlement is made, is no defense. We are therefore of the opinion that plaintiff is not confined to the necessity of *following the fund* because the defendant paid after judgment. Going back to the lack of any statement in section 964 expressly making defendant liable, it may be observed that the only necessity for a statement anywhere in the statute explicitly making the defendant liable is in the last seven lines of section 965, and the only reason it is necessary there is because it is then talking about payments or settlements made before judgment, that is, before defendant's liability has been declared, and hence it was necessary, in that event, to expressly make it liable.

There is a further point made by defendant in this connection and that is that plaintiff should have proceeded in the Allen case by motion for a rule on Robertson and Yeater to show cause why they should not pay the amount of plaintiff's lien. This really is but a

branch of the contention that plaintiff is required to follow the fund into the hands of those attorneys. However, if plaintiff is not confined to such remedy then this last named point is not material. Doubtless plaintiff could have proceeded in that way *if* the proceeds were then still *under the control of the court.* [Young v. Renshaw, 102 Mo. 1. c. 187.] But, as the judgment was paid and satisfied of record October 16, 1912, and this case was not instituted until long thereafter, and was not tried until March 28, 1913, the inference is that the proceeds were no longer under the control of the court, in the absence of any showing to the contrary. And while Judge LAMM, in Waite v. Railroad, 204 Mo. 1. c. 503, says such a procedure is open to an attorney, yet he does not say it is his *only* procedure and does say that "the courts have been most industrious in giving way to a benevolent intention to seek and apply *every* remedy in point, even by way of analogy, found in the common law." And just prior to this he approved Judge Johnson's ruling in Curtis v. Railroad, 118 Mo. App. 341, wherein he held that an attorney had three remedies, one against the client or any other person receiving the proceeds, another against the defendant in a separate proceeding, and a third against the judgment itself, and that the attorney could move the court to issue an execution on the judgment to satisfy the lien. *This would be holding defendant liable after judgment* even though paid in full. And if defendant is liable without regard to the solvency of the party to whom the judgment has been paid, then the fact that plaintiff proceeded in this case by means of an independent suit is not material since that is not the gist of the objection. We do not understand that defendant contends that if it is liable, nevertheless plaintiff should have proceeded by way of a motion in the original case, but only that defendant is not liable at all, and that plaintiff can only follow the proceeds and should have done so by a rule on Rob-

ertson and Yeater. But if such is the further conten-
tion, we do not think it is tenable.

The point that plaintiff is not entitled to recover
because there is nothing in the agreed statement of
facts to show either that Robertson and Yeater are not
still holding the proceeds of the judgment in their
hands ready to pay plaintiff's claim, or to show that
they are insolvent, cannot avail defendant. As stated
before, liability in such case does not depend upon the
insolvency of a client or of anyone else to whom the
proceeds of a judgment are paid. The statute does not
say the attorney of an insolvent client shall have a lien.
Consequently, insolvency of the one receiving pay-
ment in disregard of the lien is not a condition pre-
cedent to, or a constituent element of, plaintiff's right
to sue. Plaintiff could have sued Miss Allen, the
client, or could have looked to the fund while it was in
Robertson's and Yeater's hands if she had elected to
do so. She has the right, however, not to pursue either
of these two remedies but can go after defendant in
an independent proceeding, and has elected to do so.
In such case, it is not incumbent on plaintiff to show,
as a part of her case, that it is impossible to get the
money out of Miss Allen or Robertson and Yeater.
Hence, as heretofore stated, the solvency or insolvency
of these persons is not material. If such matters can
be said to contain a defensive element, then it was in-
cumbent on defendant to show that Robertson and
Yeater still have the funds in their hands (a thing not
likely since the presumption is they performed their
duty to their client Miss Allen by at once paying the
judgment over to her less their fee), or if Miss Allen
has received it, as is quite likely, that she is financially
responsible. This was not done, and even if it had any
bearing on the case, plaintiff was not required to show
it.

It follows from what has been said that the judg-
ment should be reversed and remanded with directions

to enter judgment for plaintiff for $187.50.   So ordered.   All concur.

## ON MOTION FOR REHEARING.

TRIMBLE, J.—In the motion for rehearing it is urged that payment of the judgment to Robertson and Yeater, two of plaintiff's counsel, must protect defendant because it was the payment of a "final judgment paid to the only officers of the court authorized to receive the amount of money due on the judgment." And the question is asked, if the payment of the judgment to a portion only of plaintiff's counsel will not protect, what is one to do against whom a final judgment has been rendered?

The trouble with this contention lies in the assumption of the minor premise that Robertson and Yeater are "the only officers of the court authorized to receive the amount of money due on the judgment." If a defendant wishes to avoid all responsibility in the matter it can do so by placing the money *in custodia legis,* that is, by paying it into court, or depositing it with the clerk, throwing upon the law and the court the responsibility of saying where and to whom it shall go.   A plaintiff's counsel are authorized to receive a judgment, but so is the plaintiff.   If the law gives a lien upon the cause of action which attaches to a judgment when rendered, and that lien is in favor of every attorney who by authority renders service of which the defendant has notice, then it is not seen how payment of that judgment to one not authorized to accept and release that lien can defeat it. In the case at bar Miss Allen's remaining counsel Robertson & Yeater were authorized to accept payment of the judgment so far as Miss Allen's and their own rights were concerned, but they were not authorized to accept payment of and release Lawson's lien.

If defendant had paid the judgment into court or to the clerk, it would have been released of all liability, but not otherwise. The motion for rehearing is over-ruled. All concur.