(No. 22934.—

LUCY C. CATHERWOOD *vs.* HENRY C. MORRIS *et al.*—
(CHARLES B. ELDER, Appellee, *vs.* ROBERT CATHER-
WOOD *et al.* Appellants.)

*Opinion filed April 17, 1935—Rehearing denied June 11, 1935.*

Otto Gresham, for appellants.

Charles B. Elder, and Charles E. Lewis, for appellee.

Mr. Justice Herrick delivered the opinion of the court:

Charles B. Elder (hereinafter called the petitioner) by leave of the circuit court of Cook county filed his amended and supplemental petition for the enforcement of an attorney's lien in cause No. B-103809, (consolidated with B-114787,) entitled Lucy C. Catherwood *vs.* Henry C. Morris *et al.* To the amended and supplemental petition Robert Catherwood, individually and as administrator of the estate of Lucy C. Catherwood, deceased, Hugh Catherwood, individually and as trustee under the decree of August 14, 1934, hereinafter mentioned, and John C. Catherwood and Henry C. Morris, were made defendants. A guardian *ad litem* was appointed for John C. Catherwood. Answers were filed by the Catherwoods denying the right of the petitioner to recover. These defendants charged the petitioner with misconduct in improperly encouraging Lucy C. Catherwood to carry on fruitless litigation. Hugh and

John C. Catherwood denied the jurisdiction of the court over them, and John C. Catherwood, by an attorney other than his guardian *ad litem,* entered a special appearance by which he challenged the jurisdiction of the court. Robert Catherwood as administrator asked for judgment over against the petitioner in the sum of $5000.

There is no certificate of evidence in the record and the facts must be gleaned from the pleadings and the finding of facts in the decree allowing the claim of the petitioner. Prior to her death Lucy C. Catherwood and her brother, Henry C. Morris, had been involved in litigation with each other. (*Catherwood* v. *Morris,* 345 Ill. 617; 351 id. 557.) Lucy C. Catherwood died intestate October 17, 1933, leaving her husband, Robert Catherwood, and her two sons, Hugh R. Catherwood and John C. Catherwood, as her sole heirs-at-law. Hugh R. was of age at the time of his mother's death and John C. was a minor about eighteen years of age. Robert Catherwood was appointed administrator of the estate of his deceased wife. Five different causes at the time of her death were pending in the courts between the deceased and her brother. The death of Lucy C. Catherwood was suggested in case No. B-103809, and her surviving husband, heirs-at-law and administrator were substituted as complainants in the original bill and as defendants in the cross-bill. The petitioner is an attorney at law duly licensed under the laws of this State and has been engaged in the practice of his profession in Cook county for more than thirty years. On September 24, 1931, Lucy C. Catherwood being involved in the litigation hereinabove referred to and one of the causes being then pending upon rehearing in this court, (345 Ill. 617, *supra,*) by written contract employed the petitioner as her attorney and solicitor and placed with him for collection her claims to an accounting against Henry C. Morris for her share (1) of the proceeds of the real and personal estate of her deceased father and mother; (2) of the proceeds of the

so-called Morris agency, a trust fund alleged to have been created from the proceeds of the property of Mrs. Catherwood's parents; (3) of the profits and proceeds of transactions respecting the alleged common fund arising out of the estate of John and Susan C. Morris; (4) also her claims for recovery for her expenses, attorneys' fees, services and other claims in respect to the accounting by her in the proceedings in the consolidated cause No. B-114787, including a cross-bill of the Union Bank of Chicago as administrator *de bonis non* of the estate of Susan C. Morris, deceased, against Lucy C. Catherwood and others, the cross-bill of Henry C. Morris against her and John C. Catherwood, and the amendment and supplement to said cross-bill; (5) the petitioner being further employed generally in the litigation then pending between Mrs. Catherwood and her brother and others as well as to represent her in certain other matters.

The fees for the services of the petitioner, so far as pertinent to the issues here, were fixed by the terms of the contract at the rate of $50 per day of five hours for work in court or before the master in chancery and $50 per day of seven hours for other work. The petitioner performed services for Lucy C. Catherwood under this contract amounting to 48 days of five hours each before the court and the master in chancery and 135 days of seven hours each of other work, and incurred expenses amounting to $637.83. Statements in detail of the services and expenses were rendered monthly to Lucy C. Catherwood and no objection thereto was made by her at any time. Subsequent to her death Robert Catherwood, her surviving husband, paid $175 to the petitioner on the contract. On or about the third of November, 1933, Henry C. Morris, Hugh R. Catherwood, and Robert Catherwood individually and as administrator of his deceased wife's estate, entered into a written agreement of settlement by which they purported to settle all controversies between the parties arising

out of the rights, claims and interests in and to the property and estates of John and Susan C. Morris, deceased. So far as material here, the agreement provided that the parties mutually were to dismiss without costs all suits and court proceedings pending one against the other. Morris was to release his judgment for costs against Lucy C. Catherwood which he had obtained against her, (*Catherwood* v. *Morris,* 351 Ill. 557,) and to execute and deliver such deeds, stipulations, releases and other documents as might be necessary to carry out the intent of the settlement, and any suits to which Lucy C. Catherwood was a party at her death were to be dismissed. Henry C. Morris agreed to surrender and extinguish his life estate in three trust properties under trusts created July 1, 1917, by executing and delivering deeds to the two children of Lucy C. Catherwood. Robert Catherwood was to execute deeds to his children for the same property, and to release of record a mortgage of $21,000, and interest, on a property designated as the Oakwood and Vincennes trust property as soon as the estate of Lucy C. Catherwood was closed. Henry C. Morris agreed to hold the Catherwoods harmless from any claims of Roswell B. Mason, master in chancery, from the claims of any surety company by reason of it being surety in any case where Mrs. Catherwood and Morris were parties, and the claims of any administrator or attorney for the Susan C. Morris estate. The fees of the guardian *ad litem* for the minor Catherwood, the guardian *ad litem* for Hugh R. Catherwood prior to him becoming of age, and the guardian *ad litem* of Susan C. Morris, as well as the bill of any court reporter which the master in chancery might insist on being paid as a part of his personal obligation to the reporter, were to be borne equally by Henry C. Morris and Robert Catherwood. This last contract provided for the delivery of certain deeds, written instruments and chattels, and stated that it was expected that it would take ninety days to consummate the contract, but

if that period proved impracticable, an additional ninety days might be allowed. The minor, John C. Catherwood, did not sign such contract.

On August 14, 1934, a decree was entered in cause No. B-103809 confirming the settlement made between the parties. On the same day the petitioner gave notice of an attorney's lien for $6813.56 by mailing such notice by registered mail to Henry C. Morris at Washington, D. C. The notice was received by Morris on August 15, 1934. On the hearing on the petition to establish such lien for attorney's fees, the circuit court found by its decree rendered December 6, 1934, that the court had jurisdiction of all the parties and the petitioner was entitled to a lien in the sum of $6275, and that the estate of Lucy C. Catherwood was indebted to the petitioner in the sum of $6638.56. The petitioner in open court voluntarily remitted from the amount of the lien so found due him the sum of $1275, and from the total amount of $6638.56 adjudged to be due him he remitted the sum of $1638.56. The court thereupon decreed a lien for $5000 in favor of the petitioner upon the interests of the Catherwoods in certain of the real property described in the decree and which was obtained in the settlement of the litigation, ordered the administrator to pay such sum within five days, and in default thereof directed that the interests in said property be sold by the master in chancery to satisfy the decree, with the statutory right of redemption. The decree exempted from the sale the Oakwood boulevard property, which under the settlement was awarded to John C. Catherwood. From such order establishing the amount of fees due the petitioner and impressing a lien upon the property the Catherwoods (hereinafter called the appellants) have prosecuted this appeal direct to this court.

In the trial court, and here, the defendants have charged that the Attorneys Lien act is unconstitutional, in that it is violative of the fourteenth amendment of the Federal

constitution and of section 2 of article 2 of our State constitution.

In support of the several constitutional objections urged by the appellants against the Attorneys Lien act (Cahill's Stat. 1933, chap. 13, par. 13, p. 148; Smith's Stat. 1933, chap. 13, par. 14, p. 182;) it is argued that the notice given to Morris on August 14, 1934, and not received by him until the next day after the decree of August 14 was entered, did not afford due process of law within the provisions of the constitutions of the United States and the State of Illinois. The record shows that an amended notice of lien was filed and notice given Morris October 8 by registered mail, which was received by him October 10.

No attorney's lien was established by the decree of August 14, 1934. The object of the statute is to require notice of the existence of such claim to the party adverse to the client of the attorney claiming the lien, so that a hardship may not be imposed upon a litigant who makes and completes in good faith a settlement of the matters in litigation by creating a liability against him in favor of his opponent's attorney without notice of the attorney's lien. No citation of authorities is necessary in support of the legal proposition that notice of such lien may be given in whatsoever method the legislature may designate. None of the fundamental rights of the appellants or Morris were violated by the method of giving the notice prescribed by the statute. Ample and proper notice of the claim for lien was given to the appellants here by filing the petition to establish the lien. While it is necessary in order to constitute due process of law within the requirements of the State and Federal constitutions that orderly proceedings according to established rules which do not violate fundamental rights shall be observed, yet a general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting

all persons alike, is due process of law. (*Reif* v. *Barrett,* 355 Ill. 104; *Catherwood* v. *Morris,* 351 id. 557.) The Attorneys Lien act is not unconstitutional.

The record shows service of summons on the minor Catherwood in the original chancery suit, and the trial court properly held it had jurisdiction of all the parties as well as the subject matter of this proceeding. Nor was it necessary in order to bind the proceeds of the litigation, as contended by the appellants, that notice of the claim under the provisions of the statute relating to attorneys' liens be given to Morris before settlement of the litigation or the entry of the decree approving the settlement.

It is urged that after the death of Lucy C. Catherwood the petitioner did not represent her children. The order of December 6 finds that the petitioner was in general charge of carrying out the settlement of November 3, 1933, without any limitation of his authority expressed to him.

The appellants insist that the attorney's lien did not extend to the property acquired by the settlement. The statute gave the petitioner a lien to the amount of his claim upon the causes of action entrusted to him for collection, (*Baker* v. *Baker,* 258 Ill. 418,) and when the causes of action were finally realized upon by the acquisition of certain real and personal property, such property represented the original complainants' claims, and the attorney's lien followed the claims into such property and the lien was impressed thereon. (*Tracy* v. *Ringrole,* 262 Pac. (Cal. App.) 73.) In equity the attorney's lien extends to the proceeds into whosesoever hands such proceeds may come in the settlement. 2 Thornton on Attorneys at Law, par. 626, p. 1023; *Tracy* v. *Ringrole, supra; Meighan* v. *American Grass Twine Co.* 154 Fed. 346; *In re Heinsheimer,* 143 N. Y. Supp. 895; *Fitzgerald* v. *Irby,* 99 Va. 81, 37 S. E. 777; *Lawson* v. *M. & K. Telephone Co.* 178 Mo. App. 124, 164 S. W. 138.

It is urged that the petitioner was estopped from setting up his claim for lien. This contention appears to be based upon the theory urged by the appellants that it was the duty of the petitioner to have informed them that he had or was claiming a lien in advance of giving notice of his claim for lien to Morris or of the entry of the decree of August 14. As attorney for the appellants the petitioner was required to disclose to his clients all facts and circumstances within his knowledge and which in his honest judgment he might deem likely to affect the performance of his duty as their attorney. (*Hunter* v. *Troup*, 315 Ill. 293.) His duty as an attorney did not, nor did the statute, impose upon him any obligation to reveal to his clients that he might at some time claim a lien for his fees upon the proceeds of the litigation or the fruits of any compromise or settlement thereof. Even if it had been his duty to notify the appellants of his intention to claim a lien, his failure to do so would not work an estoppel. The doctrine of estoppel in equity is that the party against whom the estoppel is invoked has made some representation or has failed to speak when he should have spoken, and thereby the opposite party has been misled and suffered a substantial loss or has been persuaded to shift his position or assume a position for the worse in some material respect. (*Skelly* v. *Ersch*, 305 Ill. 126.) The petitioner was not estopped from asserting his claim for lien.

Lastly, it is argued (1) that the petitioner's claim is excessive, and (2) that the petitioner has been guilty of misconduct as an attorney in unnecessarily prolonging the litigation and performing unnecessary or unwise services. The order of the trial court specifically found the time expended by the petitioner under his contract in appearances before the court and the master, the time devoted to the client's affairs other than court work, the amount of money advanced by the petitioner for his client and the amount of payments made by her on the contract and by her husband

after her death, and further found that monthly statements in detail had been rendered the deceased in her lifetime; that no objections thereto were made by her, and no objections by the husband after her death until after the filing of the petition to establish the lien, although the petitioner and husband had frequent dealings. The appellants fail to point out to us any facts which even tend to contradict this finding of the trial court. The contention that the amount allowed the petitioner was excessive is without merit.

It is with reluctance that we approach subdivision 2 of the appellants' contention. It should be a matter of regret that charges of lack of professional integrity, and that an attorney willfully and for his own personal profit prolonged the litigation between the brother and sister, are so freely made in the case at bar without any evidence, so far as the record is here before us, to sustain such charges. Lucy C. Catherwood's husband was himself a lawyer practicing in Chicago. The record discloses that he continued the petitioner's employment after her death. Members of the bar owe a duty to their profession and its traditions of honest and efficient service maintained through the centuries, not to charge a fellow-lawyer with unprofessional or dishonorable conduct unless there is some substantial evidence to support the attack. The mere desire of some disgruntled client to have the charge made without some pertinent evidence upon which to base the accusation does not warrant an attorney in urging professional misconduct or lack of integrity against another attorney. The trial court found the fees of the petitioner "to be reasonable and honestly earned." The record is barren of any evidence tending to show bad faith, fraud, lack of honesty or inefficiency on the part of the petitioner.

The decree of the circuit court was correct and is affirmed.

*Decree affirmed.*