JAMES KING, Plaintiff-Appellee, v. THE DE KALB COUNTY PLANNING DEPARTMENT *et al*, Defendants-Appellants.

Second District No. 2—08—0837

Opinion filed September 28, 2009.

Ronald G. Matekaitis and John E. Farrell, State's Attorneys, of Sycamore, for appellants.

Richard H. Schmack, of Sycamore, for appellee.

JUSTICE JORGENSEN delivered the opinion of the court:

In 2007, Paul Miller, the De Kalb County planning director and zoning administrator, denied plaintiff James King's application for a building permit for a farm residence on his 53-acre agricultural property. Ronald G. Klein, the De Kalb County hearing officer, affirmed the denial of the permit. On administrative review, the trial court reversed the hearing officer's decision. Defendants, the De Kalb County Planning Department, Miller, and Klein, appeal. We affirm the trial court's order reversing the agency's decision.

## I. BACKGROUND

In 1999, Robert and Cynthia Hegerman owned a 63-acre parcel of farmland that included a residence. That year, pursuant to De Kalb County Zoning Ordinance section 4.02(D)(2), the Hegermans split

their farmland into two parcels: (1) a 10.0095-acre parcel that included the residence; and (2) a 53.1805-acre parcel. De Kalb County Zoning Ordinance app. A §4.02(D)(2) (1991). A survey of the smaller tract was prepared at either the Hegermans' or their attorney's request, and two copies were submitted to Miller. Miller approved the split and noted on both copies of the survey that the 53-acre parcel "is not buildable for future residences." Miller retained one copy of the survey for the county's planning department, and he instructed the Hegermans or their agent to record the second, signed copy at the county recorder's office. This policy and procedure is apparently carried out about 20 times per year by Miller's office. The Hegermans, their attorney, or their agent never recorded the survey in the recorder's office.

On September 10, 1999, the Hegermans sold the 10-acre parcel (with the existing residence) to Kathy A. Cech. King subsequently acquired the 53-acre parcel through a qualified intermediary as part of a tax-deferred exchange, which began in 2005 and was concluded in 2007. King apparently made clear to the Hegermans when they entered into negotiations in 2005 that he wished to acquire the tract so that he could construct a home and relocate his nursery operation from Oswego. The Hegermans did not inform King that the zoning status of the tract precluded building a residence thereon, but apparently led him to believe that he would be able to construct a farm residence on the tract. A title search did not reveal the restriction at issue.

In early 2007, King applied to the planning department for a building permit for a farm residence in which he and his wife would live and facilitate their agricultural operation. Miller denied King's application via letter on June 6, 2007. In his letter, Miller noted that King's property is zoned "A-1, Agricultural District." He further wrote:

> "The minimum lot size for a farm dwelling is 40 acres in the A-1 District. However, the subject property is the balance of a farm that was originally 63 acres in size and included a farm dwelling. The dwelling and 10-acres were separated from the farm via a Plat of Survey in 1999. The Plat of Survey was prepared and submitted by the property owner to the Plat Officer for approval in accordance with the provisions of Section [4.02(D)(2)] of the [De Kalb] County Zoning Ordinance. The consequences of application of this provision, which allows the subdivision of a house built prior to August 15, 1979, is that the balance of the farm from which the house is divided is rendered 'not buildable' for future residences. *This restriction*, which was mandated by the zoning regulations in force

in September of 1999 and which is still the case today, *was noted in writing on the Plat that effected the division.* Consequently, no Building Permit for a new farm dwelling may be issued for the 53-acre parcel." (Emphases added.)

King appealed to the county's hearing officer, arguing that the Conveyances Act (765 ILCS 5/0.01 *et seq.* (West 2006)) requires that an instrument affecting title to real estate must be recorded in the county in which the property is situated and that therefore the unrecorded plat was not binding on him and the parcel would be buildable. See 765 ILCS 5/28 (West 2006). King further noted that the survey was placed in a planning department file with similar surveys and was noted on a Squaw Grove Township map included in the same file. He also asserted that the existence of the file is referenced in neither the county's zoning ordinance nor the public record of land transactions in the recorder's office.

A public hearing was held on August 2, 2007. On August 3, 2007, the hearing officer affirmed Miller's decision and denied King's appeal. The hearing officer found:

"Certainly [King] should have a remedy, and it would appear to the undersigned that his remedy is against the seller from whom he purchased the property and not against the Zoning Administrator. The provisions of [section 4.02(D)(2)] are much like the provisions of any other part of the Zoning Ordinance[,] and anyone purchasing property who desires to know the zoning status of the property would normally check with the zoning department to determine that. The title company normally does not raise these issues and most provisions of the Zoning Ordinance are not to be found in the Recorder's Office. A good analogy appears to be variations which are an example of a restriction on property which are not recorded in the Recorder's Office and yet are binding on the purchasers of those parcels of property."

King filed a complaint for administrative review in the circuit court. 735 ILCS 5/3—103 (West 2006). Following briefing and arguments, the circuit court, on August 7, 2008, reversed the hearing officer's decision, finding that the Conveyances Act "requires that there be a recording." Defendants appeal.

## II. ANALYSIS

On appeal, we review the administrative agency's decision and not the circuit court's determination. *Village of Oak Park v. Village of Oak Park Firefighters Pension Board,* 362 Ill. App. 3d 357, 365 (2005). An agency's factual findings are considered *prima facie* true and correct, and we will reverse them only if they are against the manifest weight of the evidence. *Carlisle Investments Group, Ltd. v. White,* 366 Ill.

App. 3d 876, 883 (2006). However, we review *de novo* questions of law. *Carlisle*, 366 Ill. App. 3d at 883.

Defendants argue first that the hearing officer's factual findings were not against the manifest weight of the evidence, because the facts in this case are undisputed. Second, defendants argue that the Conveyances Act does not invalidate or render unenforceable the county's zoning ordinance against King's property. Defendants assert that the Conveyances Act gives persons the opportunity to ascertain status of title to property. They note that the split of the Hegerman parcel into two tracts pursuant to the zoning ordinance changed only the zoning status of King's property. Further, they argue that, when King purchased the property from the Hegermans, he acquired their title and rights and continues to hold good title to the property. Defendants fault King for relying on what he alleges are the Hegermans' misrepresentations as to the property's zoning status and classification, rather than inquiring with the county's planning and zoning department.

King responds that the restriction on his property is unenforceable where he had no knowledge of it, unless the restriction was recorded pursuant to the ordinance or the Conveyances Act. For the first time on appeal, King also asserts that the ordinance is not applicable to his property because his parcel comes within the agricultural use exemption contained in the zoning division of the Counties Code. See 55 ILCS 5/5—12001 *et seq.* (West 2006).

Section 4.02(D)(2) of the De Kalb County Zoning Ordinance provides:

"D. *Lot area requirements*:

\*\*\*

2. *Subdivisions*, for the purpose of the sale or transfer of ownership of a lot(s) containing an existing residential structure(s) constructed prior to August 15, 1979, said lot(s) being not less than two acres in area and containing not more than one such residence, *may be approved by the plat officer.* This provision is intended to allow for the division of one or more existing farm residences from the fields used for agricultural activities. Such subdivision, if approved by the plat officer, is not a violation of [the] ordinance. The zoning lots that result from such subdivisions shall be legal, nonconforming residential lots in the A-1 district, and *the balance of the property from which each such lot is divided shall not be buildable for future residences. For purpose [sic] of review, a plat of survey shall be required for said \*\*\* division. The plat officer's signature of approval shall be required on the survey prior to recording.*" (Emphases added.) De Kalb County Zoning Ordinance app. A §4.02(D)(2) (1991).

The fundamental canon of ordinance or statutory construction is to ascertain and give effect to the drafter's intention. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 286 (2008); *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995). Generally, the language used by the drafter is the best indication of the drafter's intent. *Kirwan v. Welch*, 133 Ill. 2d 163, 165 (1989). Accordingly, when the plain language of the enactment is clear and unambiguous, the drafter's intent that is discernable from the language must prevail. *Land v. Board of Education*, 202 Ill. 2d 414, 421-22 (2002); see also *MD Electrical Contractors*, 228 Ill. 2d at 287. Courts should not, under the guise of statutory or ordinance construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment. *People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 394 (1992).

Defendants argue that, contrary to King's assertions below that it was the county's responsibility to ensure that the survey was recorded, there is nothing in the ordinance imposing such a duty on the county. Defendants assert that it was the Hegermans' responsibility to record the second, signed copy of the survey.

King contends that section 4.02(D)(2) requires that the restriction be recorded and that it is the county's duty to ensure that this be done. He argues that, since the benefit of the restriction on his tract inures only to the county, it is incumbent on the county to make certain that a document incorporating the restriction becomes a part of the public record, if the county seeks to enforce the restriction on subsequent owners. He believes that a potential buyer, knowing of the ordinance, would be entitled to assume that, if it applied to the land he or she was considering purchasing, then the restriction would be evidenced by a recorded document in compliance with that ordinance. In King's view, a system that requires a purchaser to consult the internal files of an administrative agency is cumbersome and unfair. He argues that, because the survey of the Hegerman-Cech parcel, which is contained in a drawer in the planning department and which contains no description or depiction of the larger (*i.e.*, King's) parcel,[1] was never recorded, the restriction can have no effect on a subsequent purchaser such as himself. As to any potential claim against the Hegermans, King complains that he desires a farm residence on his property and not a cash award. Further, he asserts that, even if he brought a successful suit against the Hegermans, there is no guarantee that a money judgment could ever be enforced.

---

[1]As of 2000, the ordinance has apparently required a description or depiction of the larger parcel to effect a section 4.02(D)(2) split.

Defendants do not contest King's argument that the ordinance requires that a survey reflecting a section 4.02(D)(2) split be recorded. By its terms, the ordinance provides that the plat officer may approve a subdivision of lots, that a plat of survey is required for the division, and that the plat officer's signature evidencing his or her approval of the split is required on the survey "prior to recording." De Kalb County Zoning Ordinance app. A §4.02(D)(2) (1991). In our view, a recording is assumed and, therefore, required. Had the county contemplated that recording of surveys under the ordinance be discretionary, the county could have chosen alternative language in the ordinance, such as "if recorded." We also conclude that the county bears the burden to record the survey or to ensure that it is recorded. We agree with King that the county benefits from splits effected under the ordinance, in that it is able to maintain the agricultural character of the county by restricting (via the ordinance) residential construction. Furthermore, it is not clear from the language of the ordinance that it is the original owners' (*i.e.*, the Hegermans') duty to record the survey. In light of this ambiguity, we construe the ordinance against the county. See *County of Lake v. First National Bank of Lake Forest*, 68 Ill. App. 3d 693, 697 (1979) (as zoning ordinances are in derogation of the common law, they are strictly construed in favor of property owner's right to the unrestricted use of his or her property).

Having determined that the ordinance requires a recording, we next address the effect as to King of the failure to record the survey of the Hegerman split.

Section 28 of the Conveyances Act provides, in relevant part:

"§28. Deeds, mortgages, powers of attorney, *and other instruments relating to or affecting the title to real estate* in this state, *shall be recorded* in the county in which such real estate is situated ***. No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting title to real estate in this State may include a provision prohibiting the recording of that instrument, and any such provision in an instrument signed after the effective date of this amendatory Act shall be void and of no force and effect." (Emphases added.) 765 ILCS 5/28 (West 2006).

The purpose of section 28 of the Conveyances Act "is to give third parties the opportunity to ascertain the status of title to the property." *Federal National Mortgage Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 634 (2000). "The purchaser of real estate may rely on the public record of conveyances and instruments affecting title unless he has notice or is chargeable with notice of a claim or interest that is inconsistent with the record." *Kuipers*, 314 Ill. App. 3d at 634.

Section 30 of the Conveyances Act provides:

"§30. All deeds, mortgages and *other instruments of writing which are authorized to be recorded*, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." (Emphasis added.) 765 ILCS 5/30 (West 2006).

■ The purpose of section 30 of the Conveyances Act "is to protect subsequent purchasers against unrecorded prior instruments." *Kuipers*, 314 Ill. App. 3d at 635. "An unrecorded interest in land is not effective as to a *bona fide* purchaser without notice." *Kuipers*, 314 Ill. App. 3d at 635.

Defendants, relying on section 28 of the Conveyances Act, argue that the statute does not invalidate section 4.02(D)(2) of the county's ordinance or affect its enforceability against King's property. They argue that the section 4.02(D)(2) split did not affect the status of title to the King parcel and, therefore, the Conveyances Act provisions upon which King relies do not apply. In defendants' view, the split affected only the zoning status of the parcel King purchased. Defendants argue that it was the Hegermans' responsibility to record the second, signed copy of the survey.

Addressing the Conveyances Act, King agrees that it gives persons the opportunity to ascertain status of title to property. However, King argues that status of title is not limited to proof of ownership, but includes any restrictions placed on the property as the result of voluntary actions, such as liens, covenants, easements, and like provisions limiting the use of the property.

We agree with King that the Conveyances Act controls. Section 30 of the Conveyances Act refers to "other instruments of writing which are authorized to be recorded" and notes that after being recorded such instruments "shall take effect and be in force" as to all subsequent purchasers without notice. 765 ILCS 5/30 (West 2006). Clearly, section 4.02(D)(2) authorizes, indeed requires, a recording, and, therefore, pursuant to section 30 of the Conveyances Act, the failure to record the split of the Hegerman parcel makes the ensuing restrictions void as to a subsequent purchaser without notice—namely, King. Accordingly, whether or not it was the county's duty to ensure that the survey was recorded, we agree with King that the Conveyances Act renders the prohibition on the building of a residence void as to King, who had no notice of the restrictions imposed on the parcel as a result of the split.

■ Finally, relying on section 5—12001 of the Counties Code, King argues in the alternative that his land comes within the section's agricultural use exemption. King raises this argument for the first time on appeal. It is well established that, if an argument is not presented in an administrative hearing, it is forfeited and may not be raised for the first time on appeal. *James L. Hafele & Associates v. Department of Employment Security*, 308 Ill. App. 3d 983, 987-88 (1999). We thus find the Counties Code argument forfeited for failure to raise it below. Further, as King presents the argument in the alternative, we need not address it.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

HUTCHINSON and SCHOSTOK, JJ., concur.