# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pedersen & Houpt, P.C. v. Main Street Village West, Part 1, LLC*,
### 2012 IL App (1st) 112971

---

| | |
|---|---|
| Appellate Court Caption | PEDERSEN AND HOUPT, P.C., Plaintiff-Appellant, v. MAIN STREET VILLAGE WEST, PART 1, LLC.; TATUM AND SHEA, LTD.; OLD SECOND NATIONAL BANK, N.A.; NORTH AMERICAN SAVINGS BANK, F.S.B.; JJR HOLDINGS, LTD.; and MB FINANCIAL BANK, N.A., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-11-2971 |
| Opinion filed | December 28, 2012 |
| Rehearing denied | March 4, 2013 |
| Modified opinion filed | March 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff law firm's attempt to collect its lien for attorney fees via a foreclosure action in a pending mechanic's lien case involving third parties was properly dismissed on the ground that the Attorneys Lien Act does not provide for a foreclosure action as a means of collecting such a lien, especially when none of the parties to the mechanic's lien case was ever defined as a party against whom plaintiff's client may have had a cause of action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-30891; the Hon. Lisa R. Curcio, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Pedersen & Houpt, P.C., of Chicago (Arthur M. Holtzman and Donald J. Moran, of counsel), for appellant.

Arnstein & Lehr, LLP (David A. Golin, of counsel), Polsinelli Shughart, PC (Peter J. Schmidt, Tiffany R. Harper, and Matthew R. Moriarity *pro hac vice*, of counsel), and Fidelity National Law Group (Erik J. Anderson, of counsel), all of Chicago, for appellees.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Connors and Simon concurred in the judgment and opinion.


**OPINION**


¶ 1     After questions were raised by the trial court regarding the propriety of a law firm's attempt to collect an attorney fees lien in a pending mechanic's lien case, the law firm filed a foreclosure action seeking payment of its attorney fees and priority over all mechanic's lien claimants. The trial court ruled that the Attorneys Lien Act (770 ILCS 5/0.01 *et seq.* (West 2010)), unlike the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2010)), and other statutes, did not provide for foreclosure as a mechanism to collect a statutory attorney fees lien and dismissed the action. This appeal by the law firm followed. For the reasons that follow, we affirm.


¶ 2                                I. BACKGROUND

¶ 3     The genesis of the attorney fees that the Pedersen & Houpt law firm (P&H) seeks to collect via its foreclosure complaint filed in a mechanic's lien court is a real estate dispute wherein it successfully represented its client, Summit Real Estate Group, LLC (Summit). Back in 2004, P&H filed a complaint on behalf of Summit seeking specific performance of a real estate contract to acquire a parcel of real estate located in Orland Park, Illinois, from certain defendants (Lakeside Bank as trustee, the holder of legal title to the property; Hickory Properties, Inc.; and Steven P. Gianakas) in exchange for money. Summit Real Estate Group, LLC v. Lakeside Bank, No. 04 CH 16593 (Cir. Ct. Cook Co.). Trial was held in 2005, and the circuit court entered a judgment on February 17, 2005, requiring specific performance of the real estate contract wherein the defendants were to convey the Orland Park real estate to Summit. *Id*. The circuit court granted a stay of the specific performance order on the condition that Lakeside Bank post a $6 million bond. Lakeside sought a stay in the appellate court, also requesting that the amount of the bond be lowered. These appeals were dismissed. The circuit court set a new closing date for June 17, 2005. When Lakeside Bank still refused to close, the circuit court set July 12, 2005, as a return date on a rule to show cause. On June 28, 2005, Lakeside Bank filed a motion in the appellate court to stay the circuit court's

hearing. This appeal was also dismissed. P&H represented Summit during these appeals. Neither before nor during P&H's representation of Summit's interests until the conclusion of the specific performance case did P&H ever give notice to any of the three defendants of any attorney fees lien. P&H also did not file any motion to enforce or adjudicate any attorney fees lien before the judgment became final. In other words, no statutory lien was sought to be placed on the property in the specific performance action.

¶ 4    The defendants in the above-described specific performance real estate action complied with the court's final judgment by conveying the parcel of Orland Park real estate in two separate conveyances to Summit on August 22, 2005 and January 12, 2006. The portion of the parcel conveyed to Summit on August 22, 2005 is not subject to this lawsuit. There is no evidence that P&H ever sought to enforce a lien on that portion of the parcel. The second portion of the parcel was conveyed to Summit on January 12, 2006. Summit, by quitclaim deed dated January 13, 2006, immediately conveyed the second portion of the parcel to one of the defendants in this lawsuit, Main Street Village West, Part 1, LLC. Both transactions involving the second portion of the parcel were the subject of the same closing that occurred on January 25, 2006. P&H did not assert any attorney fees lien arising out of the successful specific performance action at the January 25, 2006 closing even though P&H had a representative present at the closing. The Main Street Village West's deed was recorded on January 30, 2006. It is this second portion of the Orland Park real estate involved in the original specific performance action that is the subject of this lawsuit.

¶ 5    By letter dated January 17, 2006, almost 11 months after the judgment in the specific performance lawsuit became final, P&H sent a notice of its claimed statutory attorney fees lien to only one of the named defendants in the specific performance action, Hickory Properties, Inc. The two other defendants, Lakeside Bank and Steven P. Gianakas, against whom Summit had a claim in the specific performance action were not sent any attorney fees lien notice directly by P&H on January 17, 2006 or at any other time. Copies of the January 17, 2006 P&H attorney fees lien notice were also sent to two agents at Chicago Title & Trust, to the attorney who had represented the defendants in the specific performance litigation and to the individual former clients of P&H in the specific performance action, Messrs. Tyman and Schutte. Immediately upon receipt of the attorney fees lien notice by Hickory Properties, Inc., their attorney informed P&H on January 23, 2006, that P&H's notice of an attorney fees lien was not meritorious.

¶ 6    The January 25, 2006 closing for this second portion of the parcel of real estate was concluded and P&H purposefully did not assert or in any way claim payment should be made for its attorney fees arising out of its successful litigation in the specific performance action that made this closing possible. In other words, P&H intentionally missed the opportunity to get paid during this liquidating event. P&H's stated rationale was to try to work out a payment plan with its client for its attorney fees. P&H also never followed up with the title company by filing a claim with it for insuring over P&H's claimed lien.[1]

---

[1]The facts contained in this paragraph were obtained by representations made by counsel for P&H at oral argument held on November 13, 2012.

¶ 7 On August 1, 2006, more than six months after receipt of the January 23, 2006 letter from attorneys for Hickory Properties, Inc., and the January 25, 2006 closing on the final portion of the property where its client sold the property to a third party, P&H filed a lawsuit in the law division of the circuit court, to recover its unpaid fees from its former client, Summit, for its representation in the specific performance action. This suit included a count for enforcement of its attorney fees lien naming a subsequent owner of the second parcel of real estate, Main Street Village West, Part I, LLC, as an additional defendant. Pedersen & Houpt, LLC v. Summit Real Estate Group, LLC, No. 06 L 8078 (Cir. Ct. Cook Co.). This lawsuit did not name any of the original three defendants from the specific performance action and, specifically, did not name Hickory Properties, Inc., the one defendant to whom P&H sent its letter dated January 17, 2006 asserting a lien. On August 18, 2006 and August 21, 2006, P&H recorded two *lis pendens* using the personal identification number (PIN) used for mechanic's lien notices for the subject property.

¶ 8 The law division judge ruled on an attorney disqualification issue in the action filed by P&H to recover its attorney fees. P&H appealed that ruling and this court addressed the issue in an opinion. *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681 (2007). The appellate court opinion is illuminating as it recounts P&H's postjudgment efforts in a 43-count complaint which included allegations against its client, Summit, for fraudulent conveyance of the property that was the subject of the specific performance action " 'with the intent to *** defraud its creditors' " (*id*. at 684) including the attorney fees Summit owed to P&H, in violation of the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 2006)). P&H also included counts for requests for payment of its attorney fees from Summit on theories of fraudulent misrepresentation and promissory estoppel due to Summit's false promises made to P&H that it would pay P&H its attorney fees. *Pedersen & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 684 (2007). We can find no specific judicial ruling on P&H's fraudulent conveyance, fraudulent misrepresentation and promissory estoppel actions against Summit other than the money judgment against Summit for the full amount of P&H's attorney fees that was entered by the circuit court after remand.

¶ 9 On remand from the appellate court, on June 9, 2009, the law division judge of the circuit court found that the P&H attorney fees lien attached to the property that P&H obtained for Summit as a result of the specific performance litigation. On July 29, 2009, the law division judge also determined that the P&H attorney fees lien was for $278,870.90.

¶ 10 On November 3, 2009, the law division judge determined that the date of attachment of the P&H attorney fees lien to the property was January 17, 2006, the date P&H sent its first and only notice to one of the defendants from the specific performance lawsuit and to others. On that same day, the law division judge granted summary judgment in favor of P&H and against its former client, Summit, in the amount of $297,333.76, a money judgment for all attorney fees Summit owed to P&H. No judgment was entered against the other defendants named in the law division case. The real estate at issue in the specific performance case was subdivided and transferred to other entities between January 13, 2006 and November 3, 2009. There is no evidence that those individuals who had subsequently acquired an interest in the property were ever named as additional defendants in this lawsuit or were otherwise

given notice that P&H was requesting the court to adjudicate a significant interest in the property, specifically, P&H's attorney fees as a lien on the property. We can find no evidence of record that the law division judge was ever informed that third parties not named in the complaint pending in law division court had ownership and lien interests in the subject property pending before him.

¶ 11    In a separate proceeding in mechanic's lien court, on August 22, 2008, a general contractor filed a mechanic's lien action to foreclose on a portion of the property that was the subject of the above-mentioned specific performance action. In January 2009, P&H was participating in this mechanic's lien proceeding pending before Judge Curcio from which this appeal is taken. The trial court in the instant mechanic's lien proceeding issued an order dated August 19, 2009, which stated: "At [the next] status hearing [September 21, 2009] counsel [for all mechanic's lien claimants] shall be prepared to inform the Court how their clients intend to proceed as to the lien claimed by Pedersen/Houpt. Pedersen/Houpt shall report on the status of lien [pending before the law division judge]."

¶ 12    On January 25, 2010, P&H filed a counterclaim and third-party complaint in the mechanic's lien proceedings before Judge Curio which consisted of one count which sought a judgment of foreclosure and sale of the property no longer owned by its former client, Summit, or the three defendants from the original specific performance action against whom its client had a claim, in order to collect on attorney fees owed to it by Summit arising out of the specific performance litigation. Additionally, the counterclaim/third-party action requested enforcement of its attorney fees lien pursuant to the Attorneys Lien Act (770 ILCS 5/1 (West 2010)) and an order granting P&H priority for its statutory attorney fees lien over all lien claimants in the mechanic's lien proceedings. Motions to dismiss pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2010)) and motions for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2010)) were filed by various opposing parties. By its seven-page memorandum order dated July 20, 2011, the circuit court granted all motions to dismiss and all motions for summary judgment and ruled that P&H has no right under the law to foreclose on its statutory attorney fees lien against this property. P&H appeals this ruling.

¶ 13                                  II. ANALYSIS
¶ 14                            A. Standard of Review
¶ 15    This decision involves statutory interpretations of the Attorneys Lien Act and the Mechanics Lien Act. Statutory interpretations are questions of law that this court reviews *de novo*. *Acme Markets, Inc. v. Callanan*, 378 Ill. App. 3d 676, 677-78 (2008). The parties are correctly in agreement that the standard of review to be employed in this action is *de novo* review.

¶ 16                               B. Discussion
¶ 17    The mechanic's lien court ruled that because the statute allowing for an attorney fees lien for services rendered did not specifically allow for collection of that lien via a foreclosure action, it would not allow P&H to proceed with its counterclaim and third-party complaint

in the mechanic's lien proceedings to foreclose on a portion of the property that was the subject of the specific performance litigation.

¶ 18	In addition to the record in the mechanic's lien action for foreclosure, the record contains the 64-page, 388-paragraph complaint filed by P&H in the law division wherein P&H claimed a statutory attorney fees lien on a portion of the property previously owned by Summit that was the subject of the specific performance action. There is no indication from the specific performance action that reflects P&H ever claimed an attorney fees lien was imposed while that case was pending or prior to judgment being final. P&H only subsequently sued for a money judgment against its client in a separate action, which was allowed and for a lien on the property no longer owned by Summit or the original three defendant-owners against whom Summit had a claim during the specific performance action which was the subject of the specific performance action in which Summit prevailed. It is not possible to enter any judgments affecting property unless a court has jurisdiction over the *res*. *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 120 (2007). There is no evidence that the subsequent purchasers, current owners or parties with an interest in the property were sued, served with process or otherwise given proper notice of the suit by P&H before the law division court.

¶ 19	P&H argues that its statutory attorney fees lien has priority over all lien claimants because it was perfected on June 9, 2009 and ruled on by the law division judge to be validly attached to the property as of January 17, 2006, the date of P&H's notice of lien to only one defendant from the prior specific performance action and to others but not to others involved in this mechanic's lien action litigation. P&H argues that because the law division judge determined through his ruling that its lien attached to the property on January 17, 2006, it predates the recording of any mortgages or mechanic's liens in the action before Judge Curcio and, therefore, its statutory attorney fees lien in this mechanic's lien proceeding should have priority over all other liens and mortgages.

¶ 20	The purpose of the Mechanics Lien Act is to protect those who, in good faith, furnish material or labor for construction of buildings. 770 ILCS 60/0.01 *et seq.* (West 2010); *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 78 Ill. App. 3d 531, 532 (1979). A lienable improvement includes labor or services in improving land or a structure on the land, and performing any services or incurring any expense for an architect, structural engineer, or professional engineer. 770 ILCS 60/1 (West 2010). Attorney services are not covered by the Mechanics Lien Act; rather, they are covered by the Attorneys Lien Act.

¶ 21	We begin this analysis with the Attorneys Lien Act, as it existed in 2006, which states:

"Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. ***

To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may

-6-

have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien." 770 ILCS 5/1 (West 2006).

¶ 22   No statutory attorney fees lien was placed on the property during the specific performance action. Although P&H filed its *lis pendens* using the mechanic's lien PIN, P&H's current collection efforts should not be treated like a mechanic's lien on the ground that it secured the property for the prior owner, Summit, in a prior specific performance action and subsequently secured both a money judgment against Summit and a lien on the entire property for its fees that the law division judge ruled in 2009 attached to the property as of January 17, 2006.

¶ 23   P&H's efforts in the specific performance action should not be treated like a worker's mechanic's lien, and its *lis pendens* filed like a mechanic's lien notice is invalid. In other words, just because P&H's efforts secured the property for its client, Summit, these efforts cannot be compared to workers who are allowed to proceed with mechanic's liens for improvements made to property that enhance the property's value.

¶ 24   Generally, a lien is a charge on property or personalty for the payment of a debt. If properly recorded, it encumbers property to secure payment of the debt. 51 Am. Jur. 2d *Liens* § 1 (2003). We are concerned in this case with a statutorily created attorney fees lien. The "character, operation and extent of [a statutory] lien must be ascertained from the terms of the statute *** and then only where there has been substantial compliance with all the statutory requirements." (Internal quotation marks omitted.) *United States v. Beaver Run Coal Co.*, 99 F.2d 610, 612 (3d Cir. 1938). "Since the attorney's lien is a creature of statute, the [Attorneys Lien] Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement. Attorneys who do not strictly comply with the [Attorneys Lien] Act have no lien rights." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001); *Haj v. American Bottle Co.*, 261 Ill. 362 (1913); *Unger v. Checker Taxi Co.*, 30 Ill. App. 2d 238 (1961); *Schlake v. Lumbermens Mutual Casualty Co.*, 25 Ill. App. 2d 194 (1960); *Cazalet v. Cazalet*, 322 Ill. App. 105 (1944). Therefore, statutory liens are available and enforced only on such terms as the legislature sees fit to provide.

¶ 25   Under the Attorneys Lien Act, an attorney is allowed to pursue a number of statutorily authorized avenues to obtain payment of attorney fees that are less drastic than foreclosure and, arguably, less expensive and more effective. Attorneys are allowed under the statute to file a lien for all attorney fees they have earned and will earn in the future for their client. They must serve their notice of lien on all parties against whom their client may have a claim. Unlike the specificity required under the Mechanics Lien Act, attorneys do not need to designate a sum certain owed to them. Given the prospective nature of the notice to be served, attorneys cannot at the time of filing a notice know with any degree of certainty what that figure would be for their fees. When P&H sought a foreclosure action as the vehicle to

secure payment of its attorney fees lien, it was pursuing a method that is not an approved collection mechanism under the statute. The Attorneys Lien Act does not provide for a remedy of foreclosure on real property in the event the client does not pay his attorneys their fees. If our legislature wished to authorize foreclosure as a method to collect a statutory attorney fees lien, it would have specifically included such a provision in the statute as it did for liens arising out of mortgages (735 ILCS 5/15-1101 (West 2010)), judgments (735 ILCS 5/12-101 (West 2010)), the Commercial Real Estate Broker Lien Act (770 ILCS 15/1 (West 2010)), the Mechanics Lien Act (770 ILCS 60/0.01(West 2010)), and the Oil and Gas Lien Act of 1989 (770 ILCS 70/1 (West 2010)), all of which clearly provide for lien foreclosure. In other words, Judge Taylor's order of June 9, 2009, that ruled that the lien attached to the property on January 17, 2006, did not convert the attorney fees lien into the equivalent of a real estate mortgage or a mechanic's lien so as to permit a right of redemption via a foreclosure action. P&H could have recorded its judgment it secured from Judge Taylor on November 3, 2009 against any property then owned by Summit, but there is no evidence that it did so. The judgment that P&H received against Summit from the law division judge appears to be a judgment for its attorney fees outside of the Attorneys Lien Act. It is well settled that it was perfectly permissible for P&H to sue its client, Summit, outside of the Attorneys Lien Act to recover for its services. *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 98 (2001).

¶ 26    P&H cites *Catherwood v. Morris*, 360 Ill. 473 (1935), as support for its position that its attorney fees lien may attach to real property and is valid even though conveyances to third parties preceded its lien notice. *Catherwood* does provide support for its argument that a statutory attorney fees lien may attach to real property. However, *Catherwood* does not support its argument that such a lien can attach to property even after the property is conveyed away from the parties against whom an attorney's client had a claim or away from the attorney's client. *Catherwood* involved a dispute over the distribution of real property of an estate. The dispute involving payment of an attorney fees lien arose while the original case was pending. The circuit court in *Catherwood* held that there existed a valid attorney fees lien "upon the interests of the Catherwoods in certain of the real property *** obtained in the settlement of the litigation" (*id*. at 478) and ordered the administrator of the estate to pay the attorney fees. Our supreme court affirmed and held that the attorney fees lien attached to the real property acquired through the settlement.

¶ 27    On the basis of the *Catherwood* ruling, P&H argues that its lien can attach to property even after the final judgment in the specific performance action was satisfied. Further, P&H argues that it was not required to send notice of its lien to all defendants against whom its client once had a claim and the lien extends to innocent, unsuspecting third parties who acquired an interest in the real property even before P&H asserted its lien. We disagree. In *Catherwood*, the client of the attorney seeking payment of his previously noticed lien actually still possessed the property at the time the trial court enforced the lien. No final judgment had been entered in the case. The *Catherwood* ruling provides no basis for a conclusion that P&H's lien can attach to property after judgment is satisfied and runs with the property once it is out of the hands of the original defendants and then out of the hands of its client, in the instant case, Summit, to whom the property was transferred pursuant to a settlement or

judgment. *Catherwood*, 360 Ill. at 480; *Process Color Plate Co. v. Chicago Urban Transportation District*, 125 Ill. App. 3d 885, 889 (1984) (attorney for plaintiff who took no action so his lien would be paid from proceeds of lawsuit was precluded from seeking lien enforcement directly against the defendant in the underlying litigation).

¶ 28    If we were to allow P&H's method of recovery, the current owner is not afforded due process by being given an opportunity to contest notice or whether the lien was properly perfected not just against the property, but against the current owners, who had never used P&H's legal services. The fundamental principles of due process require notice and an opportunity to be heard where a judicial body makes a fact-based adjudication affecting property rights. Therefore, absent a statutory mechanism written into the Attorneys Lien Act, P&H's attempted method to collect a statutory attorney fees lien must be found to be ineffectual.

¶ 29    As one can readily see from the above-quoted Attorneys Lien Act, there is no statutory procedure for an attorney to commence an action to foreclose on a piece of real property. Thus we find P&H's novel contention that using the mechanic's lien process and foreclosure proceedings to recoup attorney fees owed to it from a prior owner was not a proper method to enforce its attorney lien. P&H submitted at oral argument that there are no time limitations on an attorney's ability to assert a statutory attorney fees lien against a parcel of property in a specific performance action and it was not restricted to doing so only before final judgment or only before the property was transferred out of the hands of the original defendants and its clients. This theory, if adopted, has the potential of hurting multiple innocent third parties and transferring the burden of paying a client's attorney fees to others with no connection whatsoever to the litigation other than the fact that they acquired their interest in the real property sometime in the future without benefit of a notice of lien or otherwise.

¶ 30    Further, it does not appear of record that P&H perfected its judgment from the law division. In order to perfect a judgment, one must place the world on notice that it has an interest superior to that of other creditors in the property. In Illinois, in addition to the provisions of the Attorneys Lien Act, which P&H did not follow, one may perfect a lien through recordation or by obtaining possession through foreclosure proceedings. A recorded notice of foreclosure provides constructive notice of a lien on property. 735 ILCS 5/15-1503 (West 2010). The issue of perfection becomes critical when addressing the priority of competing liens. In this case, P&H filed its lawsuit seeking to recover its unpaid attorney fees from Summit on August 1, 2006. P&H filed two *lis pendens* on August 18 and 21, 2006, respectively, using the PIN used for mechanic's lien notices. On June 9, 2009, the law division judge found the attorney fees lien attached to the property. On November 3, 2009, the law division judge determined that the date of attachment was January 17, 2006. On January 25, 2010, P&H filed its counterclaim and third-party complaint in the mechanic's lien action pending before Judge Curcio and for the first time P&H sought a judgment of foreclosure on a portion of the property that its former client Summit had conveyed to Main Street Village West on January 13, 2006. In this case, P&H also failed to perfect its judgment from the law division prior to the other lienholders doing so, as required by section 30 of the Illinois Conveyances Act (765 ILCS 5/30 (West 2006)) in order to assert priority as a creditor. *King v. De Kalb County Planning Department*, 394 Ill. App. 3d 699, 704-05

(2009).[2]

¶ 31     P&H claims that the third parties involved in the present litigation had constructive notice via P&H's improper *lis pendens* filed utilizing the mechanic's lien PIN. However, constructive notice of an encumbrance claimed on a piece of property arises only when the encumbrance is in the chain of title. *Krueger v. Oberto*, 309 Ill. App. 3d 358, 368 (1999); *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1039 (1996). An encumbrance is in the chain of title only when it is recorded in the grantor-grantee index of the county in which the property is located. *Krueger v. Oberto*, 309 Ill. App. 3d 358, 368 (1999); *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill. App. 3d 512, 514 (1988). P&H never recorded any lien in the grantor-grantee index. The current defendants, therefore, became involved with this parcel of property free and clear of any lien interest of P&H because they did not have either actual or constructive notice of it. The burden of proof is on the party charging actual or constructive notice and P&H failed to meet its burden of proof on this issue. *Krueger v. Oberto*, 309 Ill. App. 3d 358, 368 (1999).

¶ 32     Additionally, the Attorneys Lien Act uses language that is prospective in nature. It instructs attorneys to serve notice of their lien upon "the party against whom their client *may have* such suits, claims, or causes of actions." (Emphasis added.) 770 ILCS 5/1 (West 2006). After providing notice of their lien, the statute provides that the "lien shall attach to any verdict, judgment or order entered and to any money or property which *may be* recovered." (Emphasis added.) 770 ILCS 5/1 (West 2006).

¶ 33     The Attorneys Lien Act is used frequently by personal injury attorneys who take on injured clients' cases on a contingent fee basis. The personal injury attorney serves his notice of lien to all identified potential defendants before, or simultaneously with, the filing of their clients' lawsuit in order to take full advantage of the attorneys lien statute and protect their fees. Any judgment that is paid out is typically sent via a check made payable to both the client and his personal injury attorney resulting in no dispute arising between the defendants and the plaintiff's attorney for failing to honor a lien. In this case, it was impossible for the prior defendants in the specific performance action to have failed to honor a lien when they were given no notice of the lien. The only notice that was given by P&H was by letter dated

[2]P&H, in its motion to supplement its reply brief, cites a 1996 unpublished ruling from the federal appellate court entitled *Bankers Trust Co. of California N.A. v. Beneficial Illinois Inc.*, 92 F.3d 1187 (7th Cir. 1996) (table), which its previous research failed to uncover. While it is true that this court allowed the motion, the federal order does not control here. *International Profit Associates, Inc. v. Linus Alarm Corp.*, 2012 IL App (2d) 110958. First, a decision of any federal court interpreting Illinois state law is not binding on this court. *Wilson v. County of Cook*, 2012 IL 112026. Secondly, the unpublished federal order is not inconsistent with Illinois precedent interpreting the Illinois Conveyances Act and this court's opinion. There is no evidence in this case that subsequent creditors, such as the bank issuing the construction loan, the general contractor and the mechanic's lienholders had actual or constructive notice of P&H's attorney fees lien. Additionally, the 1889 Illinois Supreme Court case upon which the federal court relied was issued a decade before the 1909 enactment of the Illinois Attorneys Lien Act which is at issue in this case. See *Anthony v. Wheeler*, 130 Ill. 128 (1889).

January 17, 2006, to one prior defendant from the specific performance action and not until after the case had concluded, the 2005 judgment became final and the property was already transferred to P&H's former client, Summit, by quitclaim deed on January 12, 2006 and then to a third party on January 13, 2006. P&H specifically never sent its notice to the original named defendant, Lakeside Bank, which was the trustee for the property during the specific performance litigation and was the party that complied with the judge's order to transfer the property to P&H's client, Summit.

¶ 34 P&H had every opportunity to protect its attorney fees by filing a lien during the pendency of the original specific performance action, before judgment became final or before the property was transferred to third parties, but it did not. 770 ILCS 5/1 (West 2006). P&H never gave any adverse party from the specific performance action any notice of a claimed attorney fees lien until it sent its letter dated January 17, 2006, and then inexplicably sent notice to only one of the original three defendants, Hickory Properties, Inc., even though Lakeside Bank was the trustee.

¶ 35 P&H also had every opportunity to seek payment of its attorney fees during the January 25, 2006 closing and the closing that preceded it that also involved a portion of the real estate that was the subject of the specific performance action. Our legislature did not intend that attorneys, with full awareness of their client's recovery and who had every opportunity to assert a statutory attorney fees lien against the proceeds or property going to their client, should be free to ignore those proceeds or property flowing to their client and later claim the benefit of their attorney fees lien from the defendants in the underlying action, much less from an uninvolved third party, in an action unrelated to the litigation giving rise to the proceeds. *Process Color Plate Co. v. Chicago Urban Transportation District*, 125 Ill. App. 3d 885, 889 (1984). The laborers who filed the mechanic's liens had no such ability to protect themselves from any lien that P&H did not pursue immediately and did not secure until June 2009. What the laborers did know and all that they could possibly know was that a valid construction loan was made to the current owners of the property which would fund the project they worked on to improve the property. The workers proceeded to improve the property as they were hired to do. It is hardly their fault that P&H did not secure a lien on the property before it was transferred from the original defendants in the specific performance case to P&H's former client, Summit and then to other *bona fide*, new owners and, more importantly, never recorded the judgment after it was entered by the law division judge in 2009. Further, that judgment was only against Summit, which no longer had any interest in the real property at issue when the judgment was entered in 2009.

¶ 36 The object of the Attorneys Lien Act is to provide notice of an attorney's claim for fees to the party adverse to its client so that no hardship may be imposed upon any adverse party who, in good faith, makes good on a settlement or final judgment in the litigation by creating a liability against the adverse party without notice of the attorney's lien. *Catherwood v. Morris*, 360 Ill. 473, 479 (1935). As our supreme court succinctly stated: "[O]nce an attorney serves proper notice of the lien on the client's adversary, that party bears responsibility for respecting the lien. If the underlying defendant does not respect the lien, then the defendant becomes liable for the attorneys fees." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 98 (2001); *Sutton v. Chicago Rys. Co.*, 258 Ill. 551, 553 (1913); *Process Color Plate Co. v.*

*Chicago Urban Transportation District*, 125 Ill. App. 3d 885, 890 (1984). This pronouncement was based on the supreme court's explanation made long ago:

> " 'By serving the notice claiming a lien the attorney in effect becomes a joint claimant with his client *** in the proceeds of any settlement that may be made by his client, and to the extent of the amount of his fee has the same interest in such proceeds *** as his client and is entitled to his *pro rata* share thereof.' " *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 97-98 (2001) (quoting *Baker v. Baker*, 258 Ill. 418, 421 (1913)).

¶ 37    P&H's arguments go even further, as its attempt to impose its January 17, 2006 lien on unsuspecting third parties who had no involvement in the specific performance action and no notice of its lien assertions. We are not stating that an attorney fees lien does not or cannot attach to property secured by the attorneys for their client. What we are stating is that P&H had not given notice of any attorney fees lien as required by statute prior to the transfer of the property from the parties against whom its client had a claim to its client. P&H also did not assert its statutory attorney fees claim prior to when its client transferred the property to third parties at the closing, thereby missing this liquidating event which could have secured payment of the debt its client owed to it and provided the third parties with some notice of its claimed lien. See *Catherwood v. Morris*, 360 Ill. 473, 481 (1935) (failing to speak when someone should have spoken can mislead another).

¶ 38    Additionally, neither Summit nor any of the three original defendants from the specific performance action were the owners of the property at the time the judgment was secured on June 9, 2009 before Judge Taylor. There is no legal basis to have the current owners of the property step into the shoes of the prior owner and require them to bear the burden of the attorney fees Summit incurred in the 2004-05 specific performance action. P&H argues that the new owners of the property additionally obtained the benefit of P&H's legal services because its legal services in acquiring the property for Summit allowed the new owners to purchase it from Summit and others. This analysis falls flat. Such a result would approve an unjust enrichment for Summit, who originally incurred the attorney fee debt to P&H. In any case involving property, such a decision would approve a client's action in not paying his attorney fees for legal services incurred during a transaction involving real property and, under a theory of subrogation, transfer the nonpaying client's attorney fees to a new owner and a party who was never a client of P&H and, more importantly, was never a party against whom its client had a claim and had no lien notice from P&H. If proper notice of a statutory attorney fees lien had been given to the original three defendants in the specific performance action, those defendants would have shared in Summit's burden of ensuring P&H was paid. This is what the Attorneys Lien Act provides.

¶ 39    We also observe that the attorney fees lien which was sent by P&H suffers from several fatal defects. First, notice was not sent before or during the pendency of the specific performance suit as contemplated by the prospective language used in the Act. Secondly, notice of P&H's lien was sent well after the case was resolved and the judgment became final. *Silberstein v. Joos*, 59 Ill. App. 3d 293, 295 (1978) (notice must be sent before judgment is satisfied by defendants); *Rendtorff v. Lowman*, 184 Ill. App. 391 (1913) (same); see also *Catherwood v. Morris*, 360 Ill. 473, 480 (1935). Third, there is no evidence that P&H's notice was sent while it was still acting as Summit's attorney, as is required. *Rhoades*

-12-

*v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217 (1979); *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001 (1995); *Paul v. Neely*, 155 Ill. App. 3d 241 (1987); *Department of Public Works v. Exchange National Bank*, 93 Ill. App. 3d 390 (1981). Fourth, notice was not sent to all defendants previously named in the specific performance action. *In re Midway Industrial Contractors, Inc.*, 272 B.R. 651, 669 (Bankr. N.D. Ill. 2001); *Cazalet v. Cazalet*, 322 Ill. App. 105 (1944); *Reynolds v. Alton, Granite & St. Louis Traction Co.*, 211 Ill. App. 158, 160-61 (1918). Additionally, notice of P&H's lien was never recorded against the property. Fifth, at the time P&H instituted their attorney fees litigation before the law division court, the property P&H had recovered for Summit in the specific performance action had already been transferred to new owners and was no longer owned or controlled by the named defendants in the specific performance action or by P&H's former client, Summit. It appears the property continued to be transferred, subdivided and encumbered during the litigation, as well. Sixth, no attempt was made by P&H to name and serve the current owners or interested parties of the property it wished to encumber with a lien of its lawsuit before the law division court. All of these defenses to the lien P&H was asserting in the lawsuit before the law division judge could have been raised by parties with an interest in the property had they been properly joined by P&H in the action.

¶ 40    P&H attempted to excuse its belated attorney fees lien when it alleged in its lawsuit before Judge Taylor that it never filed the requisite lien notice during the specific performance action because it relied on promises made by its former client, Summit, that it would pay P&H all of its attorney fees.[3] P&H, in reliance on Summit's promises, also did not attempt to enforce any lien against the property it secured for its former client, Summit, and admittedly took no action to prevent Summit from conveying the property to a new owner in January 2006.

¶ 41    The legislature, by utilizing the prospective language in the Act, gave attorneys a lien in any proceeds or property they may recover in any lawsuit or settlement. The Act clearly is meant to grant attorneys a right to share in any recovery they secure for their client in order for their attorney fees to be paid. However, this statutory right does not mean the attorneys can pick and choose when to give notice of the lien, to whom they may give notice and how and when to exercise enforcement of their lien. Attorneys must exercise their lien rights by notifying all the parties against whom their client may have a claim of their assertion while they are still acting as the attorney for their client and prior to the final judgment being satisfied in the case for which they are seeking legal fees.

¶ 42    Our supreme court has clearly stated that "an attorney's lien under the Act 'is a lien upon the proceeds, only, of the litigation or settlement of the claim' " and "the attorney's only interest is in the proceeds of the litigation or settlement." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 97 (2001) (quoting *Baker v. Baker*, 258 Ill. 418, 421 (1913)); see *Countrywide*

---

[3]Paragraph 377 of P&H's complaint states, as follows: "P&H reasonably relied upon Tynan's representations and promises to its detriment by not enforcing its attorneys' lien or otherwise seeking to prevent the transfer of the Phase 3 Property from Summit Real Estate to Main Street West."

*Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 339 Ill. App. 3d 78, 83 (2003). Only after the attorney's lien is properly perfected, "upon petition 'any court of competent jurisdiction' may adjudicate the lien. [Citation.] This includes the circuit court that heard the matter [citation], or the circuit court that has jurisdiction over the money recovered [citation]." *People v. Philip Morris, Inc.*, 198 Ill. 2d 87, 95 (2001). The law division court was neither the original court that heard the specific performance action nor a court that secured jurisdiction over the property or proceeds from the sale of the property.

¶ 43    Because P&H never served any lien notice upon all of the defendants in the specific performance case before any recovery was made by P&H on behalf of Summit, it never secured a statutory interest in any recovery of property it made on Summit's behalf with regard to the specific performance lawsuit. A proper statutory lien was never created by P&H to protect its attorney fees under the Act which would have enabled P&H to enforce it against the named defendants in the specific performance case. It is impossible for the defendants in the specific performance case to have complied with a statutory attorney fees lien when they were never made aware of it by P&H prior to final judgment.

¶ 44    The defendants in the specific performance case conveyed the property to P&H's client pursuant to the final judgment via two separate conveyances on August 22, 2005 and January 12, 2006. Only one of the three defendants in the specific performance case was given notice that P&H was asserting a statutory lien for its attorney fees and only by letter dated January 17, 2006, after the two conveyances took place. The notice was first provided by letter dated January 17, 2006, well after the judgment became final and after its former client, Summit, was conveyed the property and reconveyed it to Main Street Village West. Additionally, final judgment in the specific performance case was entered and there is no evidence that P&H was Summit's attorney at the time it gave notice to one of the three defendants in the specific performance action.

¶ 45    The best P&H can do at this point is attempt to recover its attorney fees from its client, Summit. It has already secured a money judgment against Summit for the full amount of its attorney fees. There is no evidence that P&H pursued enforcement of its judgment via a citation to discover assets or to record its judgment against its client. Instead, P&H seeks payment of its attorney fees from third parties who were never involved in the underlying litigation and also had no notice of any statutory attorney fees lien at the time they became involved with the property. Most importantly, none of the entities named by P&H involved in the mechanic's lien case was ever defined as a "party against whom [P&H's] client [Summit] may have such suits, claims, or causes of actions" as defined in the Attorneys Lien Act. 770 ILCS 5/1 (West 2006).

¶ 46    This case highlights one of the risks involved in the practice of law. Sometimes clients for whom attorneys have performed stellar legal services do not pay their bills. To remedy this problem, our legislature created a statutory method for attorneys to protect their interest in getting paid. However, the legislature did not allow this mechanism to infringe on the rights of innocent third parties and force them to pay the attorney fees that an attorney did not recover from his client. Illinois adheres to the rule that generally denies any prevailing party, like Summit in the specific performance action, to recover attorney fees from the defendant (*Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 237 (1995)), let

alone innocent third parties. What the Attorneys Lien Act does is to protect the proceeds or property recovered by a party by insuring that the attorney is paid prior to or simultaneously with the time the proceeds or property subject to the lien are distributed to his client just as in *Catherwood*. *Catherwood v. Morris*, 360 Ill. 473 (1935). P&H's belated notice of lien and subsequent foreclosure action attempts to place the burden of paying Summit's unpaid debt to P&H for attorney fees onto other innocent third parties and must fail. *Process Color Plate Co. v. Chicago Urban Transportation District*, 125 Ill. App. 3d 885 (1984). This action by P&H goes beyond what is statutorily authorized and departs dramatically from the standard Illinois rule of law regarding attorney fees obligations and payment.

¶ 47                                III. CONCLUSION

¶ 48        For all the foregoing reasons, the circuit court ruling dismissing P&H's foreclosure action is affirmed.

¶ 49        Affirmed.